UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ERIC EHMANN, on behalf
of himself and all others
similarly situated

    Plaintiff,

 v.          Case No. 16-C-247

PIERCE MANUFACTURING, INC.,

    Defendant.

---

## DECISION AND ORDER GRANTING IN PART CONDITIONAL CERTIFICATION AND NOTICE TO POTENTIAL FAIR LABOR STANDARDS ACT PLAINTIFFS

---

  Plaintiff Eric Ehmann brought this action against his employer, Pierce Manufacturing, Inc., on behalf of himself and other similarly situated employees, who he claims did not receive compensation or overtime compensation for all hours worked in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. (FLSA), and the Wisconsin wage law, Wis. Stat. § 109.01, *et seq.* Presently before the Court is Ehmann's motion for conditional certification and court-authorized notice of his claim. As part of this motion, Ehmann requests that this Court: (1) conditionally certify the proposed collective action pursuant to 29 U.S.C. § 216(b); (2) approve the Proposed Notice; (3) direct Pierce to provide the addresses, telephone numbers, email addresses, and dates of birth of all putative class members; and (4) direct Pierce to post the notice in its Wisconsin locations. For the reasons that follow, Plaintiffs' motion for conditional class certification and court-facilitated notice will be granted in part and denied in part.

## BACKGROUND

Ehmann is the sole named plaintiff in this lawsuit, but 360 other individuals have consented to join as FLSA opt-ins. Together, the named and opt-in plaintiffs all work or have worked at Pierce. Pierce manufactures firetrucks and rescue vehicles and operates facilities in Appleton and Weyauwega, Wisconsin. Pierce's manufacturing workforce amounts to over 1,600 individuals, comprised of Pierce employees and contracted workers placed at Pierce through Kelly Services, Inc. (D. Haase Decl. ¶ 3, ECF No. 94.) Pierce pays these workers, termed "production employees," on an hourly basis. (*Id.* ¶¶ 3–4.) In February 2016, Pierce paid production employees $26.73 per hour. (*Id.*) Production employees receive time and a half for all time worked beyond their regularly-scheduled shift and for all hours worked on Saturdays. (*Id.*) Pierce also pays production employees double time for working on Sundays. (*Id.*)

In 1991, production employees worked either first or second shift. (Herzfeldt Decl. ¶ 4, ECF No. 95.) First shift employees worked 8.5 hours with two 10-minute paid breaks and one 30-minute unpaid meal break. (*Id.* ¶ 5.) Second shift employees worked 10.5 hours, and their shift also included two 10-minute paid breaks and one 30-minute unpaid meal break. (*Id.*) Pierce received several requests from production employees to shorten their lunch break so that they could leave work earlier. (*Id.* ¶¶ 6–9.) In response to these requests, Pierce shortened the meal period by 10 minutes and eliminated one of the 10 minute breaks, shortening the employees' shifts by 20 minutes. (*Id.* ¶ 11; ECF No. 94-1.) Accordingly, first shift employees worked 8 hours and 10 minutes and second shift employees worked 10 hours and 10 minutes. (Herzfeldt Decl. ¶ 11, ECF No. 95.) Pierce notified production employees that under this new schedule, they would only be paid for half of their 20 minute meal break. (*Id.* ¶ 15.)

2

Over the years, Pierce modified shift schedules to accommodate changing work processes and increasing production demands. (D. Haase Decl. ¶ 9, ECF No. 94.) By 2016, production employees worked one of fifty-seven scheduled shifts. (*Id.*) In late 2015, contract workers raised concerns about not being compensated for their entire meal break. (*Id.* ¶ 11.) To minimize schedule complexity and to address these employees' concerns, effective February 21, 2016, Pierce again changed its production employees' shift schedules by shortening their shifts by 10 minutes. (*Id.* ¶ 12–13; ECF No. 94-1.) As a result, production employees worked fixed 8, 10, or 12 hour shifts and all of the breaks accompanying each shift were paid. (D. Haase Decl. ¶ 13, ECF No. 94.)

Ehmann, a contracted worker employed by Kelly Services, was assigned to work as an Assembler at Pierce's American Drive, Appleton, Wisconsin location beginning in August 2015. (*Id.* ¶ 6.) Ehmann filed this lawsuit on February 29, 2016, eight days after Pierce's new schedule became effective. He asserts that prior to the schedule modification, he worked a total of forty-four hours and fifty minutes each workweek but was not compensated for fifty minutes each week. Ehmann presently seeks conditional certification of a class of similarly situated employees defined as:

> All current and former Production employees employed by or placed at Defendant, Pierce Manufacturing, Inc., in the State of Wisconsin between February 29, 2013 and February 21, 2016, who have not been compensated for all hours worked in excess of forty (40) hours in a workweek as a result of impermissible time shaving by Defendant.

(Pl.'s Br. in Supp. at 1, ECF No. 86.)

## ANALYSIS

**I. Conditional Certification**

The FLSA permits collective actions "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29

3

U.S.C. § 216(b). Unlike a typical class action suit under Federal Rule of Civil Procedure 23, where an unwilling plaintiff must "opt out" of the class, the FLSA requires employees or former employees to "opt in" to the class by giving written consent to become a party to the collective action. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir. 1982) (explaining differences between collective action under the FLSA and class action certification pursuant to Rule 23). District courts may, in their discretion, implement this "opt in" procedure by facilitating notice to potential plaintiffs to a FLSA collective action. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Woods*, 686 F.2d at 580. "The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." *Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). Generally, in order to determine whether the representative plaintiff is "similarly situated" to potential opt-in plaintiffs, this Court follows a two-step certification approach. *Adair v. Wisconsin Bell, Inc.*, No. 08-CV-280, 2008 WL 4224360, at *8 (E.D. Wis. Sept. 11, 2008).

First, the court examines whether the plaintiff has demonstrated a "reasonable basis" for believing that he is similarly situated to potential class members. *Id.* at *3. At the first stage, the plaintiff must make "at least a modest factual showing that such collective action is appropriate." *Id.* at *4. The plaintiff may present factual support in the form of affidavits, declarations, deposition testimony, or other documents in order to demonstrate some "factual nexus between the plaintiff and the proposed class or a common policy that affects all the collective members." *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011). Though the conditional certification stage is a lenient standard, it is not a "mere formality." *Adair*, 2008 WL 4224360, at *3. Because

4

a plaintiff's "discovery demands upon conditional certification may impose a 'tremendous financial burden to the employer,'" courts must be careful to guard against wasting the parties' time and resources where certification is not appropriate at the outset. *Id.* at \*4 (quoting *Woods*, 686 F.2d at 581). If the class is conditionally certified, notice may be sent to other potential class members and discovery may proceed.

At step two, usually on the defendant's motion for decertification, the court must determine whether plaintiffs who have opted in are, in fact, similarly situated. *Brabazon v. Aurora Health Care, Inc.*, 10-CV-714, 2011 WL 1131097, at \*2 (E.D. Wis. Mar. 28, 2011). At the second stage, the court will assess whether continuing as a collective action will provide efficient resolution in one proceeding of common issues of law and fact. *Hoffmann-La Roche*, 493 U.S. at 170.

Ehmann contends that he has met the minimal burden to show that others in the potential class are similarly situated. He posits that the production employees were subjected to Pierce's "impermissible time shaving" in violation of the FLSA. Pierce argues that framing the common violation as "impermissible time shaving" is vague and overbroad and that Ehmann has failed to identify a single decision, policy, or plan to which the potential plaintiffs were commonly subject. Ehmann counters that Pierce's argument assumes unestablished allegations as fact and is improper for the purposes of this motion. (Pl.'s Reply in Supp. at 3, ECF No. 97.)

In determining whether individuals are similarly situated, the court "need not accept the plaintiff's allegations as true." *Nehmelman*, 822 F. Supp. 2d at 751. Instead, the court evaluates the entire record before it, "including the defendant's oppositional affidavits, to determine whether the plaintiffs are similarly situated to other putative class members." *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) (quoting *Jirak v. Abbott Labs., Inc.*, 566

5

F. Supp. 2d 845, 848 (N.D. Ill. 2008)). In the instant case, Ehmann has not submitted a single affidavit or declaration, deposition testimony, or other documentation supporting his proposed class. He has only provided the Court with conclusory allegations that lack any detail. Conversely, Pierce has submitted multiple declarations and documentation detailing the history of the changes to production employee schedules. (ECF Nos. 94–95.)

Based on the record before me, I conclude that defining the class as "production employees subject to impermissible time shaving" does not truly capture the common issue of the case. As Pierce suggests, "time shaving" could describe an array of wage and hour violations involving differing legal theories, evidence, and remedies. (Def.'s Mem. in Opp. at 11, ECF No. 93); *see, e.g.*, *Brickey v. Dolgencorp, Inc.*, 272 F.R.D. 344, 345 (W.D.N.Y. 2011) (finding that managers' practice of "shaving off time" from time records to avoid paying overtime violated the FLSA)*; Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 533 (S.D. Tex. 2008) (defining defendant's failure to pay plaintiff and other assistant store managers for off-the-clock work as "time shaving"). Here, Pierce identifies a specific policy to which the potential plaintiffs were commonly subject. It concedes that it did not pay its production employees for 10 minutes of their 20 minute meal break each shift. (Def.'s Mem. in Opp. at 11, ECF No. 93.) Based on the facts now before the Court, the only common element among the potential plaintiffs is Pierce's meal break policy. As such, the issue in this case is the lawfulness of Pierce's policy to not compensate Ehmann and all other non-exempt production employees for one-half of the 20 minute meal break. Therefore, the Court will conditionally certify a class of similarly situated employees defined as

> All hourly Production employees and contractors at Pierce Manufacturing, Inc.'s Wisconsin facilities who at any time between February 29, 2013 and February 21,

2016 worked a shift that included a 20 minute meal break and were not paid for the entirety of the break(s).

This definition appropriately captures the common policy that potential plaintiffs were subject to in this case.

**II. Court-Authorized Notice**

Along with his brief in support of conditional certification, Ehmann has submitted a proposed notice and consent to join form. District courts have discretion in appropriate cases to implement the opt-in provision of § 216(b) by facilitating notice to potential plaintiffs. *Hoffman-La Roche*, 493 U.S. at 169. However, "courts must be scrupulous to respect judicial neutrality" and to avoid "even the appearance of judicial endorsement of the merits of the action." *Id.* at 174. Although the Court will conditionally certify a class for Ehmann's collective action claims, the Court will address Pierce's three objections to Ehmann's proposed notice and its version of the notice of pendency of lawsuit and consent to join form. For the reasons below, I will allow Ehmann to send Pierce's version of the proposed notice and consent to join form attached to Pierce's response brief with two alterations.

First, Pierce argues that Ehmann's proposed notice is overbroad because it does not sufficiently describe the putative class or the challenged practice. Ehmann's proposed notice is addressed to "all present and former production employees of Pierce Manufacturing, Inc. from February 29, 2013 to the present." (ECF No. 86-1.) This notice is not limited to the proper individuals and does not immediately advise potential plaintiffs of the issue at the heart of this case. For instance, some employees that are currently working at Pierce may not have been working at the time the 20 minute meal policy was in effect. Conversely, Pierce's proposed notice more accurately identifies the potential plaintiffs and the challenged pay practice in this case. As explained above,

7

Pierce concedes that it did not pay production employees for 10 minutes of their 20 minute meal break each shift. Accordingly, the notice and consent to join form must use Pierce's proposed definition of the putative class as it more accurately reflects the appropriate class and the challenged issue in this case.

The parties' proposed notices are also inconsistent regarding the job duties that qualify workers as "production employees." In his composition of the potentially similarly-situated group, Ehmann lists eighteen additional production employee positions that Pierce does not.[1] The parties do not address this discrepancy in their submissions to the Court. In Pierce's answer to Ehmann's amended complaint, it denies that these production positions currently exist. (ECF No. 75, ¶ 26.) However, Pierce does not present any evidence demonstrating that these positions did not exist at any time during February 29, 2013 to February 21, 2016, the relevant time period. Therefore, the positions will be added to the section defining the composition of the potentially similarly-situated group.

Second, Pierce argues that Ehmann's notice is misleading because it does not inform putative class members of their right to obtain independent counsel and bring an individual lawsuit. Pierce argues the notice should indicate, "If you choose not to join this action, you are free to do nothing at all or to retain your own counsel independently and file your own individual lawsuit." (ECF No. 93-1.) However, because Ehmann's proposed notice informs recipients that they are free not to join this collective action or are free to file their own action, Pierce's argument is rejected. Therefore,

---

[1] These positions include Automotive Painter, Automotive Collision/Refinisher, C.O.W. Assembler, Cab Welder, Delivery Technician, Detailer, Graphic Applic Tech, Inspector, Installer, Plumber, Plumbing Assembler, Pump House Plumber, Pump Technician, Refinisher, Test Driver, Truck Driver, and Welder Fabricator.

that sentence should be replaced with: "If you choose not to join this action, you are free to take action on your own or do nothing at all."

Third, Pierce objects to the notice's facilitation. Ehmann requested that Pierce provide the last known addresses, telephone number, email address, and date of birth of all putative class members. I find that only the last known address and telephone number of a putative class member are essential. This basic information should be adequate to provide notice to most potential plaintiffs without Pierce disclosing unnecessary personal information. *See Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 632 (W.D. Wis. 2009) (finding that the privacy concerns with personal information like birth dates outweigh any marginal use in locating potential plaintiffs). Absent Pierce's objection to the timing of this requested disclosure, Pierce shall disclose all putative class members' last known addresses and telephone numbers, to the extent it possesses this information, within ten days of this order.

Ehmann also requests that Pierce be required to post notices at its Wisconsin locations. Pierce asserts that because it already posted a court-authorized notice regarding this lawsuit, being compelled to post another notice at its Wisconsin facilities would be "unnecessary and over intrusive." (Def.'s Mem. in Opp. at 15, ECF No. 93.) Previously in this case, Pierce was required to post a court-authorized notice in its employee breakrooms for six weeks, from late-April to early-June 2016. (ECF No. 66.) Requiring Pierce to post this notice would be needlessly duplicative. Indeed, the events surrounding this action have been highly publicized at Pierce's Wisconsin locations. Ehmann has not presented any evidence that mailing the notice and consent to join form would be ineffective. Accordingly, the Court authorizes the notice to be mailed to the potential class but will not order Pierce to post the notice at its Wisconsin locations.

9

## CONCLUSION

Based on the record before the Court, Ehmann's motion for certification and for authorization to send a notice (ECF No. 85) is **GRANTED IN PART AND DENIED IN PART** with the modifications set forth above. The court has included with this order a copy of the notice that Ehmann may send to putative class members. Pierce shall produce to Ehmann, within ten days of this order, the last known address and telephone number of all putative class members.

**SO ORDERED** this   12th   day of October, 2016.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
