UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

ERIC EHMANN,
on behalf of himself and
all others similarly-situated,

        Plaintiff,

    v.                                    Case No. 16-CV-247

PIERCE MANUFACTURING, INC.,

        Defendant.

## PLAINTIFF'S BRIEF IN SUPPORT OF PETITION FOR ATTORNEYS' FEES AND COSTS

## <u>INTRODUCTION</u>

This is a collective and class action alleging wage and hour violations of state and federal law committed by Defendant, Pierce Manufacturing, Inc., brought pursuant to Section 216(b) of the Fair Labor Standards Act of 1938, as amended, ("FLSA"), Wisconsin's Wage Payment and Collective Laws, Wis. Stat. § 109.01 *et seq.*, Wis. Stat. § 103.001 *et seq.*, Wis. Admin. Code § DWD 274.01 *et seq.*, and Wis. Admin. Code § DWD 272.001 *et seq.*, ("WWPCL"), and FED. R. CIV. P. 23, by Plaintiff, Eric Ehmann, on behalf of himself and all other similarly situated current and former non-exempt Production employees of Defendant.

The parties have been engaged in litigation since Plaintiff filed his Collective and Class Action Complaint on February 29, 2016, alleging that Defendant denied Plaintiff and other similarly-situated employees and contractors at Defendant compensation through impermissible compensation policies and practices. (ECF No. 1.) Specifically, Plaintiff alleged that Defendant failed to compensate Plaintiff and all other similarly-situated employees and contractors for ten

(10) minutes per shift each workweek, a practice Defendant effectively ended on February 21, 2016. (ECF Nos. 1, 54.) Throughout the course of the litigation, Defendant maintained that, among other things, it acted in good faith at all times and that its policies and practices were legal and did not violate the FLSA or WWPCL. (*See* ECF No. 75.)

Class Counsel thoroughly investigated Plaintiff's claims and engaged in lengthy and rigorous negotiations to reach a final resolution of his claims on behalf of himself and all others similarly-situated. Class Counsel: conducted calculations based on information provided by Defendant, Plaintiff, and other putative class and collective members; analyzed raw data provided by Defendant containing punch data and payroll data, among other things; and had numerous conversations with Defendant's counsel regarding the data, including the exchange of further information and calculations. (Declaration of Attorney James A. Walcheske ("Walcheske Decl."), ¶ 8.) As a result of both parties' diligent efforts, they were able to reach a resolution for Plaintiff and the putative class and collective short of additional litigation.

To date, Class Counsel has invested more than fourteen (14) months investigating, negotiating, and litigating Plaintiff's claims and those of the 2,018 putative members of the class and/or collective. In addition to those activities, Class Counsel has spent numerous hours answering putative class and collective members' questions via phone calls, meeting with putative class and collective members, and corresponding with putative class and collective members via email. (*Id.* at ¶¶ 4, 13, 19.) Class Counsel further personally prepared and mailed in excess of 2,100 notices to putative class and collective members subsequent to obtaining conditional certification, including attempts to track down putative class and collective members whose notices were returned by the United States Post Office. (*Id.* at ¶ 12.) As a direct result of Class Counsel's efforts, approximately 593 individuals opted-into the litigation, (*id.* at ¶ 14), with more opting-in

subsequent to this Court's preliminary approval of the parties' settlement agreement. (*See id.* at ¶ 28.)

At the outset of this litigation, Class Counsel agreed to be responsible for all attorneys' fees and costs in the event of an adverse result. (*Id.* at ¶ 24.) In exchange for accepting such risk, Plaintiff agreed to pay Class Counsel forty percent (40%) of any potential recovery, exclusive of costs, should a recovery be obtained. (*Id.*) Of its own volition, and to ensure fair and reasonable recovery for the class and collective, Class Counsel has agreed to seek only one-third (33.33%) of the settlement fund, as well as $8,500 in costs, a reduction from its actual expenditures incurred in connection with this case (approximately $8,833.64, exclusive of mileage). (*Id.* at ¶ 26.) As of the date of this Petition for Approval of Attorneys' Fees and Costs (hereinafter, "Fee Petition"), Class Counsel has not received any compensation for its attorneys' fees or reimbursement for its costs. (*Id.* at ¶ 25.)

The parties initially began discussing the possibility of resolving Plaintiff's claims on behalf of himself and all others similarly situated shortly after Plaintiff's Complaint was filed on February 29, 2016. (*Id.* at ¶ 6.) The parties subsequently retained a private mediator and engaged in an in-person mediation on June 29, 2016. The mediation lasted for one full day, but was ultimately unsuccessful in resolving this matter. (*Id.* at ¶ 9.) Subsequently, the mediation informally continued with the assistance of the mediator for approximately two and one-half more months, before the parties agreed to continue settlement discussions directly without a mediator's assistance. (*Id.* at ¶ 10.)

On November 2, 2016, approximately eight months after the parties first began discussing settlement and approximately four months after the parties' mediation began, the parties were able to reach a preliminary resolution. (*Id.* at ¶ 15.) All settlement negotiations were held at arm's length and, at times, were highly contentious. (*Id.* at ¶ 16.)

Over the course of the next two months, the parties engaged in significant discussions regarding the substantive provisions of the settlement agreement, including, but not limited to: the creation of a settlement fund; allocation of the agreed-upon settlement fund; the administration of the settlement; attorneys' fees and costs; and an enhancement payment for Plaintiff. (*Id.* at ¶ 17.) The parties exchanged various drafts of the settlement agreement, and engaged in legal research regarding case precedent supporting/challenging the positions each part was taking on certain matters. (*Id.*) Finally, on January 6, 2017, the parties entered into their Settlement Agreement and Release of Claims, as filed with the Court. (*Id.* at ¶ 18; ECF No. 132-1.)

Through the parties' rigorous negotiations, Class Counsel secured a $5,100,000 settlement fund. (*See* ECF Nos. 134, 132-1.) Of that amount, $3,351,500 was allocated to 2,108 putative class and collective members. (*See* ECF Nos. 134, 132-1.)

Settlement at this level represents an outstanding result for the putative class and collective. The amount specifically allocated to putative class and collective members ($3,351,500) greatly exceeded the total amount recoverable for a two-year period as calculated by Defendants ($2,486,755) and roughly approximates the "best-case scenario" the putative class and collective members' could conceivably obtain ($3,347,030). (ECF No. 134.)

Of the 2,018 putative class and collective members entitled to recovery under the settlement agreement, each stands to receive between $0.15 and $4,655.09, with an average of $1,660.80 per member. The total recovery amount and average settlement amount per class member fall within the range of recoveries made by prevailing plaintiffs and class members in other wage cases. *See, generally, Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 997 (approving settlement fund providing an average of $819.75 to each class member fair and adequate); *Prena v. BMO Fin. Corp.*, No. 15-C-09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (approving settlement averaging approximately $2,540 per class member, or "a little

over 50% of the best-case scenario for recovering overtime"); *Renteria v. Cent. Beef, LLC,* No. 5:12-CV-357-OC-15PRL, 2013 WL 2192586, at *1 (M.D. Fla. May 21, 2013) (approving settlement fund of $27,700.00 for 18 class members, for an average of $1,538.89 per class member); *Fulton v. TLC Lawn Care, Inc.,* No. CIV.A. 10-2645-KHV, 2012 WL 1788140, at *2 (D. Kan. May 17, 2012) (approving settlement fund of $40,371.40 for 14 class members, for an average settlement amount of $2,883.67 per class member); *Williams v. Aramark Sports, LLC*, No. CIV.A. 10-1044, 2011 WL 4018205, at *1 (E.D. Pa. Sept. 9, 2011) (approving settlement fund of $587,500.00 (before being reduced by $193.875.00 awarded to class counsel as attorneys' fees and costs) for 5,817 class members, for an average settlement amount of $67.67 per class member).

Given Defendant's denial of any liability to Plaintiff and the putative class and collective, as well as its available affirmative defenses, such as good faith and offsets, Class Counsel faced significant risks in litigating this matter – including not obtaining certification, suffering decertification, the potential that Plaintiff's claims would not succeed on the merits, and that, even if Plaintiff was successful on the merits, that such success would be partial or otherwise affected or reduced by Defendant's defenses – risks that could result in Class Counsel being left solely responsible for all attorneys' fees and costs incurred in litigating this matter. In light of these significant risks, which were increased and complicated by the size of the putative class and collective, Plaintiff agreed to compensate Class Counsel at the rate of forty percent (40%), exclusive of costs, in the event of a recovery. (Walcheske Decl., ¶ 24.)

Class Counsel, of its own volition, petitions here for its attorneys' fees at a reduced rate of one-third (33.33%) of the settlement fund, and has also chosen to seek a reduced reimbursement of its out-of-pocket costs ($8,500, rather than $8,833.64). (*Id.* at ¶¶ 26, 39.) Further, Class Counsel did not charge for case-related travel, despite having made repeated trips from its Brookfield, Wisconsin office to its Appleton, Wisconsin office specifically and solely for the purpose of

meeting with Plaintiff and putative class and collective members over the course of the litigation. (*Id.* at ¶ 26.) Class Counsel has and will continue to represent the interests of the Class until the terms of the settlement are completely satisfied. To date, this has included, but is not limited to, numerous meetings, phone calls, and emails with putative class and collective members answering their questions, (*id.* at ¶¶ 4, 13, 20), personally preparing and mailing notices to all 2,018 putative class and collective members, tracking down contact information for individuals whose notices were returned, and resending notices to such individuals. (*Id.* at ¶ 12.) As of the date of this Fee Petition and moving forward, Class Counsel has and will continue to make itself available to all class and collective members, with the expectation that inquiries will continue through the settlement check disbursement process. (*See id.* at ¶ 20.)

A contingency fee of one-third (33.33%) is fair, reasonable, and consistent with the contingency percentage permitted in other settlement fund settlements, and is consistent with the market rates for this geographic area. (*See* Declaration of Attorney Larry A. Johnson ("Johnson Decl."), ¶¶ 6-8; Declaration of Attorney Sandra Graf Radtke ("Radtke Decl."), ¶¶ 5-8; Declaration of Attorney Summer Hart Murshid ("Murshid Decl.") Further, a one-third (33.33%) contingency fee recognizes the significant risks assumed by Class Counsel at the outset of the case, as well as the favorable result achieved on behalf of the class and collective. The fee award sought by Class Counsel will fairly and reasonably compensate it for its efforts to investigate, prosecute, resolve, and handle the administration of Plaintiff's claims on behalf of himself and all others similarly situated, taking into account the quality, nature, and extent of Class Counsel's efforts, the result and benefits achieved for all class and collective members, and the economies provided by the judicial system by achieving the result and benefits through settlement.

Notices were sent to putative class and collective members informing them of Class Counsel's anticipated petition for fees and costs. (Walcheske Decl., ¶ 27; ECF No. 133-1.) The

period within which class and collective members have to object to those fees and costs closes on May 13, 2017. (Walcheske Decl., ¶ 28.) As of the date of this Fee Petition, no objections have been received. (*Id.*) Accordingly, Class Counsel respectfully requests that the Court award Class Counsel one-third (33.33%) of the settlement fund, or $1,700,000, as attorneys' fees, and reimbursement of costs in the amount of $8,500.00.

## STATEMENT OF FACTS

### I.    PROCEDURAL HISTORY

On February 29, 2016, Plaintiff, on behalf of himself and others similarly situated, filed the above-captioned lawsuit against Defendant, Pierce Manufacturing, Inc. alleging violations of the FLSA and WWPCL. (ECF No. 1.) Through his Complaint, Plaintiff sought, among other things, unpaid wages, liquidated damages, costs, attorneys' fees, and declaratory and/or injunctive relief. In this action, Plaintiff sought to pursue his FLSA claims as a collective action based on 29 U.S.C. § 216(b) and his Wisconsin state law claims as a class action pursuant to FED. R. CIV. P. 23.

Plaintiff contended that Defendant failed to pay him and other, similarly-situated employees and contractors the wages and overtime compensation to which they were statutorily entitled. Specifically, Plaintiff alleged that Defendant failed to compensated Plaintiff and all other similarly-situated employees and contractors for ten (10) minutes per shift each workweek, a practice Defendant effectively ended on February 21, 2016. (ECF Nos. 1, 54.) Defendant denied these allegations, asserted that it acted in good faith at all times, and that its pay practices and procedures were lawful and did not violate the FLSA and WWPCL. (*See* ECF No. 75.) Additionally, and over the course of the litigation, Defendant asserted various defenses to Plaintiff's claims, including, but not limited to, arguments that the twenty-minute break at issue was a "bona fide meal break" and that any alleged overtime owed was subject to offsets. (*See id.*)

However, Defendant recognized that the issues presented in this case were unlikely to be resolved without further extensive and costly litigation. To that end, the parties began discussing settlement soon after Plaintiff's Complaint was first filed and later engaged in a private mediation on June 29, 2016. (Walcheske Decl., ¶¶ 6, 9.)

Prior to mediation, Defendant, at Plaintiff's request, provided Plaintiff with multiple spreadsheets containing raw data: records from Defendant's Kronos system (the system it uses to record hours worked and other production activities); "JDE" files (JDE is the system utilized by Defendant that takes that data from Kronos and interfaces with Defendant's payroll system for calculating compensation); a payroll spreadsheet with payroll codes that showed what all employees were paid; contractor records showing the hours worked by contract employees; a list of Defendant's Wisconsin production workers for the three years preceding the filing of Plaintiff's Complaint; and a spreadsheet of the various pay rates of its employees at various times over the course of the three years preceding the filing of Plaintiff's Complaint. (*Id.* at ¶ 8.)

At the June 29, 2016 in-person mediation, the parties were unable to reach a resolution. (*Id.* at ¶ 10.) However, the parties continued informal mediation efforts with the mediator's assistance for approximately two and one-half more months, before agreeing to continue discussions directly and without a mediator's assistance. (*Id.*)

On November 2, 2016, approximately eight months after the parties first began discussing settlement and approximately four months after the parties' mediation began, the parties were able to reach a preliminary resolution. (*Id.* at ¶ 15.) All settlement negotiations were held at arm's length and, at times, were highly contentious. (*Id.* at ¶ 16.) Further, at all times the parties treated their settlement discussions, both direct and with the assistance of a mediator, as a means of resolving not only Plaintiff's individual claims, but also the claims of the 2,018 putative class and collective members. (*Id.*)

Over the course of the next two months, the parties engaged in significant discussions regarding the substantive provisions of the settlement agreement, including, but not limited to: the creation of a settlement fund; allocation of the agreed-upon settlement fund; the administration of the settlement; attorneys' fees and costs; and an enhancement payment for Plaintiff. (*Id.* at ¶ 17.) The parties exchanged various drafts of the settlement agreement, and engaged in legal research regarding case precedent supporting/challenging the positions each party was taking on certain matters. (*Id.* at ¶ 17.) Finally, on January 6, 2017, the parties entered into a comprehensive Settlement Agreement and Release of Claims (the "Agreement"), as filed with the Court. (*Id.* at ¶ 18; ECF No. 132-1.) That Agreement set forth all of the terms of the settlement, including, but not limited to: the creation of a settlement fund; settlement fund allocation; enhancement payment; attorneys' fees and costs; and all steps the parties would take to obtain settlement approval from the Court. (*See id.*)

On February 17, 2017, the parties filed their Joint Motion for Preliminary Approval of Class Action Settlement, Certification of a Rule 23 Class and Certification of a Collective Action, (ECF No. 132), Joint Stipulation for Certification of a Class Pursuant to Fed. R. Civ. P. 23 and of a Collective Action Pursuant to the Fair Labor Standards Act, (ECF No. 133.), and Memorandum of Law in Support of Joint Motion for Preliminary Approval of Class Action Settlement and Joint Stipulation for Class Certification. (ECF No. 134.)

On February 21, 2017, this Court entered a Preliminary Order:

1) Preliminarily approving the parties' Agreement as a fair and reasonable resolution of a *bona fide* dispute;

2) Certifying Plaintiff's Rule 23 class for settlement purposes pursuant to FED. R. CIV. P. 23;

3) Appointing Plaintiff as Class Representative for the Rule 23 class;

4) Appointing Walcheske & Luzi, LLC as Class Counsel for the Rule 23 class;

5) Certifying this case as a collective action pursuant to 29 U.S.C. § 216(b);

6) Approving the Notice of Class Action and Collective Action Settlement;

7) Ordering that the Notice be mailed within ten (10) days of the date of the Preliminary Order;

8) Ordering that each Class Member who wished to be excluded from the Settlement Class must opt-out per the instructions set forth in the Notice within sixty (60) days of the mailing of the Notice;

9) Ordering that any Class Member who does not properly and time request exclusion shall be bound by any final order approving the Agreement;

10) Ordering that any Class Member who wished to object to the proposed Agreement must file and serve written objections per the instructions set forth in the Notice within sixty (60) days of the mailing of the Notice;

11) Ordering that any objections not properly and/or timely filed will not be considered by the Court;

12) Ordering the parties to appear for a Fairness Hearing on May 31, 2017; and

13) Ordering Class Counsel to file a Petition for Approval of Attorneys' Fees and Costs no later than twenty-one (21) days before the Fairness Hearing.

(ECF No. 137.)

As of the date of this Fee Petition, approximately 1,248 individuals have opted-into the case, and no objections have been received. (Walcheske Decl., ¶ 28.)

## II.    WORK PERFORMED BY CLASS COUNSEL

On February 25, 2016, Class Counsel met with Plaintiff, Eric Ehmann, regarding potential wage and hour claims against Defendant. (*Id.* at ¶ 2.) Based on information provided by Mr.

Ehmann over the course of the following few days, Class Counsel drafted and filed Plaintiff's Complaint on February 29, 2016. (*Id.* at ¶ 3.) After obtaining additional information from Mr. Ehmann, as well as from other current and former employees and contractors at Defendant, Class Counsel filed an Amended Complaint on April 12, 2016. (*Id.*; ECF No. 54.)

Over the course of the six months following the filing of Plaintiff's Complaint on February 29, 2016 and Amended Complaint on April 12, 2016, Class Counsel spoke and met with hundreds of current and former employees and contractors (and putative class and/or collective members) of Defendant, gathered information from Mr. Ehmann and other current and former employees and contractors of Defendant, obtained affidavits from current and former employees of Defendant, and conducted calculations of potential damages for the putative class and collective. (Walcheske Decl., ¶ 4.) Class Counsel also began obtaining and filing "Pierce Manufacturing, Inc. Consent to Join Forms" from current and former employees and contractors who wished to opt-in to Plaintiff's claims against Defendant, as well as completed contact information forms from such individuals. (*Id.* at ¶ 5.)

The parties began discussing the possibility of resolving Plaintiff's claims against Defendant shortly after Plaintiff's Complaint was filed. (*Id.* at ¶ 6.) In April 2016, the parties exchanged names and information on potential mediators and, in May 2016, scheduled an in-person mediation for June 29, 2016 with a private mediator. (*Id.* at ¶ 7.)

Prior to the mediation, Defendant provided Plaintiff with multiple spreadsheets containing raw data: records from Defendant's Kronos system (the system it uses to record hours worked and other production activities); "JDE" files (JDE is the system utilized by Defendant that takes that data from Kronos and interfaces with Defendant's payroll system for calculating compensation); a payroll spreadsheet with payroll codes that showed what all employees were paid; contractor records showing the hours worked by contract employees; a list of Defendant's Wisconsin

production workers for the three years preceding the filing of Plaintiff's Complaint; and a spreadsheet of the various pay rates of its employees at various times over the course of the three years preceding the filing of Plaintiff's Complaint. (*Id.* at ¶ 8.) Subsequent to receiving this information, Class Counsel spent hours reviewing the information and calculating the potential damages of the putative class and collective. (*Id.*) Additionally, Class Counsel engaged in numerous conversations with Defendant's counsel regarding the data provided, including the exchange of additional information and calculations. (*Id.*)

On June 29, 2016, the parties engaged in an in-person mediation session with a private mediator. (*Id.* at ¶ 9.) The mediation lasted all day. (*Id.*) While the parties were unable to reach a resolution on June 29, 2016, the parties informally continued the mediation with the assistance of the mediator over the course of approximately the next two and one-half months. (*Id.* at ¶ 10.) When those discussions still proved unsuccessful, the parties continued discussing potential settlement directly and without the assistance of a mediator. (*Id.*)

On August 30, 2016, and while the parties' settlement discussions were ongoing, Class Counsel filed Plaintiff's Motion for Conditional Certification and Authorization of Notice to Similarly-Situated Persons Pursuant to 29 U.S.C. § 216(b). (*Id.* at ¶ 11; ECF No. 85.) On October 12, 2016, the Court granted Plaintiff's Motion and authorized notice to putative class and collective members. (ECF No. 99.)

Subsequently, Class Counsel personally collated, prepared, and mailed notices to each of the 2,018 putative class and/or collective members. (Walcheske Decl., ¶ 12.) As notices were returned undeliverable, Class Counsel also conducted searches for correct contact information by using information provided by Defendant, as well as other available sources such as whitepages.com, the Wisconsin Circuit Court Access system, Facebook, and LinkedIn. (*Id.*) Class

Counsel conducted these searches for approximately 149 individuals and resent notices to them, in some instances, more than once. (*Id.*)

After the notices were mailed, Class Counsel spent numerous hours answering phone calls and responding to emails from putative class and collective members, as well as meeting with them in person. (*Id.* at ¶ 13.) Through Class Counsel's direct and personal efforts, approximately 593 current and former employees and contractors of Defendant opted-into this litigation. (*Id.* at ¶ 14.)

On November 2, 2016, approximately eight months after the parties first began discussing settlement and approximately four months after the parties June 29, 2016 mediation, the parties reached a preliminary agreement to resolve Plaintiff's claims on behalf of himself and the putative class and collective. (*Id.* at ¶ 15.) All settlement negotiations were held at arm's length and, at times, were highly contentious. (*Id.* at ¶ 16.) Further, at all times the parties treated their settlement discussions, both direct and with the assistance of a mediator, as a means of resolving not only Plaintiff's individual claims, but also the claims of the 2,018 putative class and collective members. (*Id.*)

Between November 2, 2016 and January 6, 2017, the parties engaged in significant discussions regarding the substantive provisions of the settlement agreement, including, but not limited to: the creation of a settlement fund; allocation of the agreed-upon settlement fund; the administration of the settlement; attorneys' fees and costs; and an enhancement payment for Plaintiff. (*Id.* at ¶ 17.) The parties exchanged various drafts of the settlement agreement and engaged in legal research regarding case precedent supporting/challenging the positions each party was taking on certain matters. (*Id.*)

On January 6, 2017, the parties entered-into a comprehensive Settlement Agreement and Release of Claims, as filed with the Court. (*Id.* at ¶ 18; ECF No. 132-1.) The Agreement set forth all of the terms of the settlement, including, but not limited to: the creation of a settlement fund;

settlement fund allocation; enhancement payment; attorneys' fees and costs; and all steps the parties would take to obtain settlement approval from the Court. (Walcheske Decl., ¶ 18; ECF No. 132-1.)

Subsequent to entering into the Agreement, the parties jointly drafted their Joint Motion for Preliminary Approval of Class Action Settlement, (ECF No. 132), Joint Stipulation for Certification of a Class Pursuant to Fed. R. Civ. P. 23 and of a Collective Action Pursuant to the Fair Labor Standards Act, (ECF No. 133), as well as their Memorandum of Law in Support of Joint Motion for Preliminary Approval of Class Action Settlement. (ECF No. 134; Walcheske Decl., ¶ 19.) Additionally, the parties devoted significant time drafting documents accompanying these filings, including, but not limited to, the Notice and Consent and Claim Form to be sent to all existing and putative class and collective members. (Walcheske Decl., ¶ 19; ECF Nos. 133-1, 133-2.)

Although Rust Consulting is handling the ongoing administration of the settlement process, Class Counsel has devoted significant time to speaking, meeting, and corresponding with putative class and collective members, answering any and all questions they have about the case, settlement, and the settlement process. (*Id.* at ¶ 20.) Additionally, hundreds of individuals have mailed their forms to Class Counsel, rather than directly to Rust Consulting, which Class Counsel has handled accordingly. (*Id.*) As of the date of this Fee Petition, Class Counsel's communications with existing and putative class and collective members and its processing of additional Consent and Claim Forms as returned by opting-in class and collective members is ongoing. (*Id.*)

Class Counsel now submits its Petition for Approval of Attorneys' Fees and Costs along with its Brief and declarations in support of its Fee Petition.

# ARGUMENT

Class Counsel's request for a fee award of one-third (33.33%) of the settlement fund is in keeping with Seventh Circuit guidance because it is the market rate for collective and class litigation. In *In re Synthroid Mktg. Litig.*, the Seventh Circuit explained that a district court, in deciding the appropriate fee levels, "must do their best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." 264 F.3d 712, 718 (7th Cir. 2001) (*"Synthroid I"*); *see also In re Synthroid Mktg Litig.*, 325 F.3d 974, 975 (7th Cir. 2003) (*"Synthroid II"*). Similarly, in *Silverman v. Motorola Sols., Inc.*, the Seventh Circuit stated that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." 739 F.3d 956, 957 (7th Cir. 2013).

## I.   PLAINTIFF IS ENTITLED TO ATTORNEYS' FEES BECAUSE HE HAS PREVAILED IN THIS MATTER

The purpose of Section 216(b) of the FLSA is to ensure "effective access to the judicial process by providing attorneys' fees for prevailing plaintiffs with wage and hour grievances." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n. Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984). "Congress intended that the wronged employee should receive his full wages…without incurring any expense for legal fees or costs." *Id.* Consistent with these policies, in an action under the FLSA, the district court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added). Further, attorneys' fees and costs are recoverable under the Wisconsin wage and hour statutes at issue in this case. WIS. STAT. § 109.03(6).

Plaintiff is the prevailing party in this action. As such, he is entitled to an award of attorneys' fees. A plaintiff "prevails" when "actual relief on the merits of his claim materially alters the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111-112 (1992). This relief may come in the form of an enforceable judgment, a consent decree, or a settlement. *Id; see also,* FED. R. CIV. P. 23(h) ("In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement.").

Here, Plaintiff has "prevailed" because he has secured substantial relief for himself and for others through a settlement fund of $5.1 million. (*See* ECF Nos. 134, 132-1.) Accordingly, Plaintiff and members of the class and collective are entitled to an award of attorneys' fees under the FLSA and applicable Wisconsin law.

## II. CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER THE SEVENTH CIRCUIT'S MARKET-BASED APPROACH

The Court has broad discretion to determine whether a requested fee is reasonable in a class action. 7B Alan Wright et al., *Federal Practice and Procedure: Federal Rules of Civil Procedure*, § 1803.1 (3d ed. & 2008 Supp.). In the Seventh Circuit, "common fund principles properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund." *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 564 (7th Cir. 1994). Indeed, "when a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Id.* at 563. The court then determines the amounts of attorneys' fees that plaintiff's counsel may recover from the fund. *Id.* The common fund doctrine is based on the notion that "all those who have benefitted from the litigation should share its costs." *Id.* at 563.

The Seventh Circuit utilizes a "market-based approach" to setting the percentage of a settlement fund to be awarded as reasonable attorneys' fees. *See Silverman*, 739 F.3d at 957; *Synthroid I*, 264 F.3d at 718; *Synthroid II*, 325 F.3d at 975; *Florin*, 34 F.3d at 564; *Matter of Cont'l Illinois Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992). Under this approach, a district court:

> [I]s required to estimate the terms of a contract [that] private plaintiffs would have negotiated with the attorneys at the outset of the case, with reference to benchmarks, such as actual agreements between the class members and their attorneys, data from other suits, and auctions for legal services.

7B Alan Wright *et al.*, *Federal Practice and Procedure: Federal Rules of Civil Procedure*, § 1803.1 (3d ed. & 2008 Supp.); *see also Synthroid I*, 264 F.3d at 718 ("The best time to determine this rate is the beginning of the case, not the end (when hindsight alters the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low.)").

When applying this framework, "it is not the function of the judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Steinlauf v. Cont'l Illinois Corp.*, 962 F.2d 566, 568 (7th Cir. 1992). The "touchstone of the analysis" is how paying clients would have compensated the attorneys in an open market for legal services. *Id.* at 572 ("The object in awarding a reasonable attorney's fee, as we have been at pains to stress, is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible."). Ultimately, "Class Counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *Id.* at 572-73. This can be proven through "testimony or statistics concerning the fee arrangements in commercial litigation comparable to the present suit." *Id.*

The Seventh Circuit emphasized the necessity of determining the market rate for attorney's fees in class-action, settlement fund cases in *Synthroid I*, wherein the district court approved the parties' class action settlement, but awarded attorneys' fees "at a level significantly below what the lawyers had requested." 264 F.3d at 715. In so doing, the district court improperly based its fee award on the size of the settlement fund, which it characterized as a "megafund," rather than taking the market-based approach. *See id.* at 717. In reversing the district court's fee award, the Seventh Circuit stated, "We have held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Id.* at 718. "The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Id.* at 721.

In *Synthroid II*, the Seventh Circuit further elaborated that the fee award must be made with "reference to arrangements that satisfy willing buyers and sellers rather than the compensation that judge thinks appropriate as a matter of first principle." 325 F.3d at 976. In applying this standard, a court is *not* required to "monitor how many hours the lawyers prudently devoted to the case. The client cares about the outcome alone." *Id.* at 979-980.

Subsequent to *Synthroid I* and *Synthroid II*, the Seventh Circuit reaffirmed its commitment to the market-based approach in *Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005), *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007), *Williams v. Rohm & Haas Pension Plan,* 658 F.3d 629 (7th Cir. 2011), and *Silverman*, 739 F.3d at 957.

In *Taubenfeld*, a single class member objected to a court-approved settlement agreement that awarded the plaintiffs' counsel one-third (33.33%) of the total settlement as attorneys' fees.

415 F.3d at 598. The Seventh Circuit affirmed the district court's approval of the 33.33% contingency fee, because it was based on the market-rate standard. *See id.* at 598-600.

In *Sutton*, the Seventh Circuit rejected the district court's attorney fee award for giving undue weight to the degree of success, "without factoring the value that the market would have placed on Counsel's legal services had its fee been arranged at the outset," 504 F.3d at 694, emphasizing that "[i]n deciding fee levels in common fund cases, we have consistently directed district courts to do their best to award Counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Id.* at 692.

In *Williams*, class members objected to the district court's approval of an attorneys' fee award of $43.5 million, arguing that the court should have applied a lodestar cap to those fees. 658 F.3d at 645. The Seventh Circuit dismissed the objectors' notion, stating:

> We need not spend much time on the district court's methodology: the court recognized that its task was to assign fees in accord with a hypothetical *ex ante* bargain, *see Synthroid*, 264 F.3d at 718; it weighted the available market evidence, *see Taubenfeld,* 415 F.3d at 599; and it assessed the amount of work involved, the risks of nonpayment, and the quality of representation, *see Synthroid*, 264 F.3d at 721.

*Id.* at 636. Ultimately, the Court found that the district court's market-based, rather than lodestar, approach "best replicated the market for…class action attorneys." *Id.*

In *Silverman*, class members objected to the district court's approval of an attorneys' fee award of $55 million, because the rate (27.5% of a $200 million settlement fund) was fixed at the end of the litigation, rather than at the outset. 739 F.3d at 957. In rejecting the objector's argument and upholding the district court's fee award, the Court emphasized "that attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and sellers of legal services." *Id.*

Here, Class Counsel's attorneys' fee request of one-third (33.33%) of the settlement fund comports with the market-based approach utilized in and repeatedly emphasized by the Seventh Circuit. Class Counsel's requested attorneys' fees are consistent with the rate of other attorneys in the community, are consistent with fee awards from this Court in class action cases, and are appropriate given the risks taken by Class Counsel in this case and the result obtained by Class Counsel on behalf of Plaintiff and all class and collective members.

A. **Class Counsel's One-Third Contingency Fee Rate Is Consistent With The Rates Of Other Attorneys In The Community**

In this case, Class Counsel seeks an attorneys' fee award that is consistent with what a willing client would agree to pay an attorney to take and prosecute this type of case at the outset of representation. Specifically, Class Counsel seeks an attorneys' fee award representing one-third (33.33%) of the $5,100,000 settlement fund, or $1,700,000 This award is actually $340,000 less than what Plaintiff agreed to pay Class Counsel at the outset of representation in this matter if recovery was obtained, because Plaintiff initially agreed that Class Counsel would receive forty percent 40% of any recovery, exclusive of costs. (Walcheske Decl. ¶¶ 24, 26.)

As set forth in the accompanying Declarations of Attorneys Larry A. Johnson, Sandra Graf Radtke, and Summer Hart Murshid, a contingency fee of one-third (33.33%) is consistent with the market rate for legal services in similar, complex litigation in Wisconsin's Federal Courts. (*Id.* at ¶¶ 22-23; Johnson Decl., ¶¶ 6-8; Radtke Decl. ¶ 5-8; Murshid Decl. ¶ 6-8.) As such, and pursuant to the Seventh Circuit's market rate approach, Class Counsel's Fee Petition should be approved.

B. **Class Counsel's One-Third Contingency Fee Rate Is Consistent With The Approved Rates In Similar Matters Before This Court And Other Courts**

Class Counsel's request of one-third (33.33%) of the settlement fund falls within the normal percentage range of attorney fee awards approved by courts. *See* 4 William Rubenstein, Alba Conte & Herbert Newberg, *Newburg on Class Actions* § 14:6, p. 558 (4th ed. 2002) (citing a

1996 Federal Judicial Center Study finding that percentage-based attorney fee awards in common fund class actions were between 20% and 40% of the total fund); *Burkholder*, 750 F. Supp. 2d at 997 (finding that a rate of 33.33% "is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers" in FLSA actions) (collecting cases). "When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'" *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986).

Courts "routinely hold that one-third of a common fund is an appropriate attorneys' fee award in class action settlement, including wage and hour settlements." *Koszyk v. Country Fin. a/k/a CC Servs. Inc.*, No. 16 CIV. 3571, 2016 WL 5109196, at *4 (N.D. Ill. Sept. 16, 2016) (collecting cases). Indeed, this Court has repeatedly held that a one-third (33.33%) contingency fee rate for attorneys' fees is reasonable in FLSA and Wisconsin wage law actions. *See, e.g., Frank v. Gold Cross Ambulance Serv., Inc.,* 2:13-CV-1149, ECF Nos. 24, 31 (E.D. Wis. Dec. 3, 2014); *Beierle v. BR Metal Technology,* 2:13-CV-1280, ECF Nos. 28, 40 (E.D. Wis. June 26, 2014); *Trujillo et al., v. Saelens' Corp.*, 2:13-CV-1096, ECF Nos. 25, 37 (E.D. Wis. May 15, 2014); *Williams v. Cargill*, 2:09-CV-1006, ECF No. 81 (E.D. Wis. Mar. 23, 2014).

By virtue of this Court's prior approval of a one-third (33.33%) contingency fee rate in similar matters, as well as the approval of that same rate by other federal courts, Class Counsel's request for a one-third (33.33%) contingency fee award is reasonable and within the market rate for similar cases. As such, Class Counsel's Fee Petition should be approved.

### C. Class Counsel's One-Third Contingency Fee Rate Is Reasonable Given The Risks Presented By Continued Litigation In This Matter And The Results Achieved For Plaintiff And Members Of The Class And Collective

In addition to Class Counsel's Fee Petition being consistent with the rates of other attorneys in the community and approved rates in similar matters before this Court and other courts, Class

Counsel's petition is further proven reasonable given the risks presented by continued litigation in this matter and the results achieved for Plaintiff and the members of the class and collective.

Class Counsel's efforts yielded a favorable result for Plaintiff and members of the class and collective. The 2,018 putative class and collective members stand to receive between $0.15 and $4,655.09, with an average of $1,660.80 per member.

More importantly, this result was reached in the face of substantial risk. It is well established that complex, class litigation is inherently risky. *See White v. Sundstran Corp.*, 256 F.3d 580, 586 (7th Cir. 2001) (stating "…attorneys already supply risk-bearing services in class actions. They invest legal time on a contingent fee, taking the risk of failure in exchange for a premium award if the class prevails."). Many class actions are decided (and dismissed) at the certification (or decertification) stage of litigation, given the exacting standard of proof set forth in FED. R. CIV. P. 23 and 29 U.S.C. § 216(b). *See, e.g., Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995); *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.2d 283, 321 (3d Cir. 1998); *see also Espenscheid v. DirectSat USA, LLC,* 705 F.3d 770 (7th Cir. 2013).

Beyond the time expended by attorneys (and the costs inherently associated therewith), the cost of litigating collective and class action lawsuits can be substantial. *See, e.g., Berndt v. Cleary Bldg. Corp.,* No. 11-CV-791-WMC, 2013 WL 3287599, at *2 (W.D. Wis. Jan. 25, 2013) (finding that $50,303.06 in costs was reasonable in an FLSA collective and Wisconsin state law class action). Class Counsel accepted all of these risks (and costs) in the face of the distinct possibility that Plaintiff's claims simply might not succeed, at which point Class Counsel would recover nothing for the time it expended. This high risk of nonpayment favors Class Counsel's Fee Petition. *See Sutton*, 504 F.3d at 693-94 (recognizing "that there is generally some degree of risk that

attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."); *Williams*, 658 F.3d at 636.

Additionally, via class notice, Class Counsel informed each putative class and collective member that it anticipated petitioning for fees of $1,700,000 and provided each individual with instructions on how to object to those fees if he or she so desired. (Walcheske Decl. ¶ 27; ECF No. 133-1.) The period within which class and collective members have to object to those fees and costs closes on May 13, 2017. (Walcheske Decl., ¶ 28.) As of the date of this Fee Petition, 1,248 individuals have opted-into this case, and no objections have been received, (*id*), suggesting that class and collective members are satisfied with the relief obtained by Class Counsel in this matter.

## CONCLUSION

As set forth in detail herein, the market rate for representation in similar litigation is exactly what Class Counsel has petitioned for in this matter. The petitioned-for award is consistent with the excellent result achieved by Class Counsel on behalf of Plaintiff and all collective and class members, and in light of the substantial risk of nonpayment Class Counsel faced in accepting and prosecuting this case and in working toward that result. The petitioned-for award is further consistent with fee awards in similar matters brought before this Court and other courts, and is in line with the standard fee in the prevailing market. For all of these reasons, Class Counsel respectfully requests that this Court award Class Counsel one-third (33.33%) of the $5,100,000 settlement fund, or $1,700,000 million, as a reasonable award of attorneys' fees in this case, and reimbursement of costs in the amount of $8,500.00.

Dated this 9th day of May, 2017.

WALCHESKE & LUZI, LLC
Counsel for Plaintiff


**s/ _James A. Walcheske_**
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
Jesse R. Dill, State Bar No. 1061704

WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com